## THE MUTUAL LIFE INSURANCE COMPANY
### v.
### ANNIE B. LAURENCE.

1. INSURANCE—DEATH FROM OVERDOSE OF LAUDANUM.—In construing the clause in an insurance policy exempting the company from liability in case of the "Self-destruction of the person, whether voluntary or involuntary, and whether he be sane or insane at the time," in the case of one who died from the effects of an overdose of laudanum taken to relieve pain, the ordinary rules as to degrees of negligence do not apply. The true inquiry is, whether the death of the insured was the proximate result of his own negligent act, and whether such act was under all the circumstances, a *culpable* act.

2. VERDICT OF CORONER'S JURY AS EVIDENCE.—One of the requirements of the contract of insurance being that in case of an inquest the company should be furnished with a copy of the verdict and the evidence taken upon the inquest, as a part of the proofs of loss, there was no error in admitting the same in evidence.

APPEAL from the Circuit Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed May 4, 1881.

Messrs. WINSTON & DAWES, for appellant; that where there is a condition precedent in the policy, consisting of an express

Mutual Life Ins. Co. v. Laurence.

warranty that the answers in the application are true, the burden of proving their truth is upon the plaintiff, cited McLorn v. Conn. Mut. Ins. Co. 100 Mass. 472; Campbell v. N. E. Mut. L. Ins. Co. 98 Mass. 389; Kelsey v. Univ. L. Ins. Co. 35 Conn. 225; Babbitt v. L. L. & G. Ins. Co. 66 N. C. 70; Wilson v. Hampden F. Ins. Co. 4 R. I. 159; 2 Greenleaf's Ev. § 383.

It was for the jury to decide upon the facts, and not to give the meaning of the question and answer in the application: Mitchell v. Fond du Lac, 67 Ill. 174; White v. Murtlad, 71 Ill. 250.

If the court modifies an instruction he is bound to see that the modified instruction states the law correctly: Cohen v. Schick, 6 Bradwell, 280; O'Neil v. Orr, 4 Scam. 1; Morgan v. Peet, 32 Ill. 281; Huckman v. Ferrin, 3 M. & W. 505.

The verdict was against the law, the evidence and the instructions of the court: Smith v. Ætna Life Ins. Co. 49 Ill. 211; Monk v. Union, Mut. L. Ins. Co. 6 Rob. 455; Valton v. Natl. Fund Co. 20 N. Y. 32; Brit. Eq. Ins. Co. v. Great West Ry. Co. 3 Big. L. Ins. Cas. 264; Price v. Phœnix Ins. Co. 3 Big. L. Ins. Cas. 543; Cazenove v. Brit. Eq. Co. 6 C. B. 437; Huckman v. Fenie, 3 M. & W. 505; Everett v. Desborough, 5 Bing. 503; Morrison v. Muspratt, 4 Bing. 58.

The verdict of the coroner's jury and copy of evidence taken at the inquest, were not admissible as evidence: Com. Ins. Co. v. Sennett, 41 Pa. 161; Lycoming Fire Ins. Co. Rubin, 79 Ill. 403; Howard v. City Ins. Co. 4 Denio, 502; Ins. Co. v. Schreffer, 42 Pa. 188; Newmark v. Ins. Co. 30 Mo. 160; Ins. Co. v. Lewis, 42 Ga. 587; Peoria M. & F. Ins. Co. v. Whitehill, 25 Ill. 466; Great West. Ins. Co. v. Staaden, 26 Ill. 360.

Mr. W. B. KEEP and Mr. F. H. KALES, for appellee; that the verdict of the jury was in accordance with the evidence, cited Swick v. Home L. Ins. Co. 2 Dillon, 160; Piedmont L. Ins. Co. v. Ewing, 2 Otto, 377; Ins. Co. v. Gridley, 10 Otto, 614; Bliss on Life Insurance, 621.

A question containing four distinct interrogatories will be considered as one question: Moulor v. L. Am. Ins. Co. 11 Otto, 708; Cushman v. U. S. L. Ins. Co. 70 N. Y. 72; World Mut. L. Ins. Co. v. Schultz, 73 Ill. 586.

If the answer was not sufficiently full, the insurer was not bound to accept the application: Swick v. Home L. Ins. Co. 2 Dillon, 160; Higgins v. Phœnix Mut. L. Ins. Co. 74 N. Y. 6.

Consulting a physician for a temporary ailment is not a consultation within the meaning of the application: Cushman v. U. S. L. Ins. Co. 70 N. Y. 72; Higgins v. Phœnix Mut. L. Ins. Co. 74 N. Y. 66; May on Insurance, 326; Bliss on Life Insurance, 153.

The rule as to the degree of carelessness necessary to take a case out of the class of accidental death, is well settled: Bliss on Life Insurance, 714; May on Insurance, 661; Schneider v. Provident L. Ins. Co. 24 Wis. 28; Provident L. Ins. Co. v. Martin, 23 Md. 310; Filton v. Ins. Co. 17 C. B. 122; North Am. Ins. Co. v. Burroughs, 69 Pa. St. 43.

BAILEY, J. When this case was before this court at the October term, 1879, the question presented for our decision, as we then stated, was whether the *accidental* death of a *sane* person is within the meaning of the clause in the policy exempting the insurance company from liability in case of "the self-destruction of the person, whether voluntary or involuntary, and whether he be sane or insane at the time," simply because some act of the deceased, performed with no design or intention to produce death, but for an entirely innocent purpose, and without negligence, happens to be the proximate cause of his death. Lawrence v. Mut. Life Ins. Co. 5 Bradwell, 280. In answering this question in the negative, we considered at some length the proper interpretation to be given to this clause, so far as it applies to a sane person, and reached the conclusion that it only embraces those cases " where death results from an express design on the part of the deceased, or from some act which, though performed with no express intention to produce death, is of itself *culpably negligent*," and that "where there is an absence both of intention and *culpable negligence,* the death of the insured must be regarded as accidental, and not within a proviso against self-destruction."

The case has now been submitted to a jury and a verdict found for the plaintiff; the evidence, so far as it relates to the

cause and circumstances of the death of the insured, being substantially identical with that appearing in the former record. On the trial the court instructed the jury, at the instance of the plaintiff, as follows :

"The jury are further instructed that the said defendant company is not exempted from liability because of the death of said Lawrence, resulting from laudanum administered by himself, unless they further believe from the evidence that he took the same for the purpose of committing suicide; or that he was guilty of gross carelessness in taking the same. And the court further in this behalf instructs the jury that merely accidental death, arising from some act of the deceased, is distinguishable in the law from either suicide or death by gross carelessness; and if the jury believe from the evidence that said Lawrence's death was occasioned by overdoses of laudanum taken by him to alleviate pain, and that his death was merely accidental, and not the result of either gross carelessness or circumstances constituting him a suicide, the defendant company is not exempted from liability by reason of anything in said policy relating to either voluntary or involuntary self-destruction.

"The jury are further instructed on the subject of negligence and gross carelessness, that so far as the defense in this case depends thereon, that the burden of proof rests upon the defendant; and that gross carelessness consists of something more than the omission to do that which under the circumstances of a case an ordinarily careful man would have done to avoid injury."

It is plain that these instructions place upon the language of the policy an interpretation quite different from the one adopted by us on the former appeal. In our view the exemption of the insurance company from liability depends not upon the *degree* of the negligence of the insured, but upon its *culpability*. Indeed we are unable to see how the ordinary division of negligence into degrees, such as slight, ordinary and gross, can have any application here, though it may serve a very useful purpose in cases where the doctrine of contributory or comparative negligence is invoked. The true inquiry here

is, whether the death of the insured was the proximate result of his own negligent act, and whether such act was, under all the circumstances of the case, a *culpable* act.

Some light, at least by way of illustration, may be derived from the well known use of the words "voluntary" and "involuntary" in the criminal law. Thus, the crime of manslaughter, as defined both by the common law and by our statute, is divided into voluntary and involuntary manslaughter. In defining these terms, Mr. Brown, an English law-writer of some celebrity, in his Law Dictionary says that manslaughter "may be either involuntary, as where a man doing an unlawful act not amounting to a felony, by accident kills another, *or where by culpable neglect of duty he occasions another's death;* or voluntary, as when upon a sudden quarrel two persons fight, and one of them kills the other; or where a man greatly provokes another by some personal violence and the other immediately kills him." Our statute defines involuntary manslaughter to be "the killing of a human being without any intent to do so, in the commission of an unlawful act, or of a lawful act, which probably might produce such consequence, in an unlawful manner." Besides these there is a species of homicide called "excusable homicide, by misadventure," where a person in doing a lawful act, without any intention of killing, yet unfortunately kills another.

The words, "voluntary" and "involuntary," must be regarded as being used in the policy in a sense somewhat analogous to that in which they are employed in the criminal law. They do not include cases of death by accident or "misadventure," but they must be held to include all cases where death results immediately and proximately from the culpable negligence of the insured. Doubtless, also, if death should ensue from the performance by the insured of an unlawful or criminal act, it would be a case of involuntary self-destruction within the meaning of the policy.

It follows from what we have said, that the instructions limiting the effect of the condition of the policy under consideration to cases of *gross negligence*, and attempting to apply to this case the rules ordinarily applicable to that degree of negligence, were erroneous.

There was no error in admitting in evidence the verdict of the coroner's jury. It formed a part of the proofs of death furnished by the plaintiff to the company, and was competent as tending to show performance of the conditions of the policy in that behalf. The policy required that the proofs of death should contain "full and true answers under oath, of the questions in the company's blanks for proofs of death relating to the life, health and death" of the persons whose life was insured; and among the questions in the company's blanks for proofs was the following: "In case of coroner's inquest, furnished the company with the verdict of the jury, and all the evidence on which the verdict is based." In compliance with this request, the plaintiff delivered to the company as a part of the proofs, a copy of the verdict and of the evidence taken upon the inquest. If the company was apprehensive that the jury might consider these documents as bearing upon questions to which they did not apply, it should have guarded against such possibility by proper instructions.

Evidence was given at the trial relating to alleged breaches of certain warranties in the policies, but as it was conflicting, and as the case must be submitted to another jury, we forbear expressing any opinion as to its weight.

For the error in giving the instructions above mentioned, the judgment will be reversed and the cause remanded.

Judgment reversed.